AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEIZURE WARRANT

FILED
SEP 16 2016
Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

I, Michele Yaroma, being duly sworn, state and depose as follows:

INTRODUCTION

(1) I am a Special Agent (SA) with the United States Federal Bureau of Investigation, (FBI) in Johnson City, Tennessee.

(2) My primary duties are to investigate criminal matters. I have been an agent for more than 19 years and have received training in and investigated white collar crimes, including complex financial crimes.

(3) Since April 2016, I have been assigned to an investigation of an individual named Kenneth Lynn Miller for fraudulent activity in violation of federal statutes including, but not limited to, 18 U.S.C. § 656 (theft by bank officer or employee), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1956 (laundering of monetary instruments), 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity), and 26 U.S.C. § 7201 (attempt to evade or defeat tax).

PROPERTY TO BE SEIZED

(4) The FBI is investigating the theft of funds from multiple victims' bank accounts and the illegal laundering of money derived from the foregoing unlawful activities. This affidavit is made in support of an application for the issuance of seizure warrants with respect to the following items, all of which contain funds that consist of proceeds from Miller's criminal offenses and/or consist of funds which were involved in money laundering offenses:

    (a) The contents of First Tennessee Bank account ending in xxxxx5481, in the name of Erica L. Miller and Kenneth L. Miller;

1

(b) The contents of First Tennessee Bank account ending in xxxxx7654, in the name of Erica L. Miller and Kenneth L. Miller;

(c) The contents of First Tennessee Bank account ending in xxxxx1272, in the name of Kenneth Lynn Miller and Erica L. Miller;

(d) The contents of First Tennessee Bank account ending in xxxxx0286, in the name of Kenneth L. Miller; and

(e) The contents of First Tennessee Bank account ending in xxxxx9271, in the name of Kenneth Lynn Miller SMGBL.

(5) Based on the information developed throughout this investigation and set out in this affidavit, I have probable cause to believe the items listed above are property, or are property traceable to property which was involved in a financial transaction or transactions designed to conceal and disguise the true nature, ownership, source and location of the funds in violation of the money laundering provisions of 18 U.SC. § § 1956 and 1957 and are subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(e), (f) by 18 U.S.C. § 982(b)(1). The items listed in paragraph (4) are therefore subject to civil and criminal forfeiture pursuant to 18 U.S.C. § § 981(a), 982, and 984. In addition, I have probable cause to believe the property listed above constitutes proceeds resulting from theft by a bank officer or employee, in violation of 18 U.S.C. §§ 656, 1343, and 1344, and are subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(e) and (f) by 18 U.S.C. § 982(b)(1). The items are therefore subject to civil and criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 982(a)(2).

(6) This affidavit is not intended to include every fact or matter observed by me or known by the Government in conjunction with this investigation. The information provided is

based on my personal knowledge and observations made during the course of the investigation of Miller, information conveyed to me by other law enforcement and government officials and my review of records, documents, and other evidence obtained during this investigation.

## OVERVIEW OF THE SCHEME TO DEFRAUD

(7) Miller became an employee of First Tennessee Bank, N.A. ("FTB") on or about 5/11/2000. He worked at various branches, including the branch office located at the Greeneville Main Street financial center at 206 North Main Street, Greeneville, TN. Ultimately, Miller assumed the title Financial Center Manager III, and held that position until he was terminated for cause on 2/25/2016 based upon an internal investigation which identified theft of customers' funds. His criminal conduct is described in this affidavit. During the time he was employed at FTB, he methodically and consistently abused his position of trust in order to embezzle or misapply approximately $1,039,260.03 from numerous financial accounts including individual retirement accounts (IRAs), certificates of deposit (CDs), savings accounts, and two consumer lines of credit belonging to the victims identified below. Miller also evaded approximately $161,018 in unpaid taxes. In total, Miller stole, misapplied, or evaded $1,200,278.03. Based upon Miller's actions, FTB paid substantial reimbursement to most of the victims, one of whom incurred income tax consequences as a result of Miller's theft of his IRA funds, which triggered FTB to notify the Internal Revenue Service (IRS) of the withdrawals. In addition, because Miller's scheme involved moving money *between* victim accounts, not all of the amounts which were misapplied were also stolen. After accounting for transfers between accounts, tax consequences to Miller as a result of not reporting the stolen funds on his tax returns, and customer reimbursements, the resulting unreimbursed loss was $1,044,834.91, most of which is now owed to FTB and the IRS.

3

Case 2:16-mj-00181-MCLC   Document 3   Filed 09/16/16   Page 3 of 17   PageID #: 5

(8)     On 2/25/2016, internal FTB investigators conducted an interview with Miller. At the beginning of the interview, Miller stated "I knew this day was coming." Thereafter, he admitted stealing money totaling more than $900,000 from various customers' accounts. He further admitted he knew he could steal this money because he had a reputation among many customers as a trustworthy person. Miller explained he knew which customers did not check their statements on a regular basis. In particular, Miller admitted stealing money from bank accounts and other financial accounts belonging to various persons whose initials are A.B.B., B.E.B., A.K.L., M.H., K.H., W.H.B., P.L., P.T.C., H.L.B., and a church the initials of which are W.C.P. Miller explained he committed these thefts in order to pursue his gambling habits. Lastly, Miller admitted he opened a line of credit in A.B.B.'s and B.E.B.'s name and another line of credit in the name of S.M. and D.M., in each case without their authorization or knowledge.

(9)     As part of the investigation, law enforcement received account statements and records pertaining to the financial accounts involved in the fraud. Those accounts include the following five FTB checking accounts opened in Miller's name:

    (a) account xxxxx5481 ("captioned account *5481");

    (b) account xxxxx7654 ("captioned account *7654");

    (c) account xxxxx1272 ("captioned account *1272");

    (d) account xxxxx0286 ("captioned account *0286"); and

    (e) account xxxxx9271 ("captioned account *9271").

as well as account statements and documents pertaining to the victims' numerous CDs, savings accounts, and checking accounts. All of the relevant accounts were held at FTB.

## DEPOSIT OF STOLEN PROCEEDS INTO CAPTIONED ACCOUNTS

(10) The investigation has revealed that Miller embezzled, purloined, and converted to his own use, approximately $1,039,260.03 funds from accounts held by unsuspecting First Tennessee Bank account holders between on or about 4/16/2012 and on or about 2/9/2016. A review of the relevant bank records shows the stolen funds were placed directly into captioned account *5481, captioned account *1272, captioned account *9271, and captioned account *0286. Stolen funds were placed indirectly into captioned account *7654. In addition, as explained in paragraphs (23) and (25), the investigation further revealed Miller engaged in financial transactions, including electronic transfers of funds, between the captioned accounts, demonstrating Miller attempted to disguise the true nature, ownership, source, control, and location of the stolen funds, or proceeds of a specified unlawful activity.

### *Captioned Account *5481*

(11) On 1/11/2016, Miller stole $80,056.86 from a CD belonging to a church, the initials of which are W.C.P. The account number of W.C.P.'s CD was 189273246. I have reviewed the debit slip pertaining to this CD, interviewed the bank customer who opened the CD, and determined this amount was withdrawn on 1/11/2016 without W.C.P.'s authorization or knowledge. My investigation further revealed Miller used these stolen funds to purchase a cashier's check (number 593103823) for the same amount. Miller deposited the cashier's check into captioned account *5481. I have reviewed the 1/22/2016 monthly account statement for captioned account *5481 and determined $80,056.86 was deposited into the account on 1/11/2016.

(12) On 2/8/2016, Miller stole $41,902.59 and $55,545.31 (for a total of $97,447.90) from two CDs belonging to A.K.L. The account numbers for A.K.L.'s CDs were 176118295

5

and 178632294, respectively. I have reviewed the debit slips pertaining to these two CDs, interviewed the victim customer and determined these amounts were withdrawn without A.K.L.'s authorization or knowledge on 2/8/2016. My investigation further revealed Miller used these stolen funds to purchase a cashier's check (number 593103906) for the combined amount of $97,447.90. Miller then debited transactions against the cashier's check, including a $52,000 deposit into captioned account *5481. I have reviewed the 2/22/2016 monthly statement for captioned account *5481 and determined $52,000 was deposited into the account on 2/9/2016.

*Captioned Account *1272*

(13)   On 11/23/2015, Miller stole $100,000 from a savings account belonging to P.T.C., payable on death (POD) to P.L., the sister of P.T.C. P.T.C. is now deceased. The account number for P.T.C.'s savings account was 187071543. I have reviewed the 12/31/2015 account statement pertaining to this savings account, interviewed P.L. and determined $100,000 was withdrawn on 11/23/2015 without P.T.C.'s authorization or knowledge. My investigation further revealed Miller deposited $16,991.35 of this stolen $100,000 into captioned account *1272. I have reviewed the 11/25/2015 monthly statement for captioned account *1272 and determined $16,991.35 was deposited on 11/23/2015.

(14)   On 1/28/2016, Miller stole $84,529.69 and $70,334.24 (for a total of $154,863.93) from two CDs belonging to A.K.L. The account numbers for A.K.L.'s CDs were 176127829 and 173428480, respectively. I have reviewed the debit slips pertaining to these two CDs, interviewed the victim customer and determined these amounts were withdrawn on 1/29/2016 without A.K.L.'s authorization or knowledge. My investigation further revealed Miller used these stolen funds to purchase a cashier's check (number 593103873) for the

6

combined amount of $154,863.93. Miller then debited transactions against the cashier's check, including a $45,834.34 deposit into captioned account *1272. I have reviewed the 2/24/2016 monthly statement for captioned account *1272 and determined $45,834.34 was deposited into that account on 1/29/2016.

(15) As explained above in paragraph (12), Miller stole $41,902.59 and $55,545.31 (for a total of $97,447.90) from two CDs belonging to A.K.L., and used the proceeds to purchase a cashier's check (number 593103906) for the combined amount of $97,447.90. Miller then debited transactions against the cashier's check, including a $35,297.90 deposit into captioned account *1272. I have reviewed the 2/24/2016 monthly statement for captioned account *1272 and determined $35,297.90 was deposited into the account on 2/9/2016.

*Captioned Account *0286*

(16) On 4/16/2012, Miller stole $52,311.22 from a CD belonging to B.E.B. and A.B.B. The account number for the CD was 184278578. I have reviewed the debit slip pertaining to the CD, interviewed the victim customers, and determined $52,311.22 was withdrawn from the account on 4/16/2012 without B.E.B.'s or A.B.B.'s authorization or knowledge. My investigation further revealed Miller deposited $27,249.07 of this stolen money into captioned account *0286 on 4/16/2012.

(17) On 6/30/2014, Miller stole $37,429.90 from two traditional IRAs belonging to B.E.B. The accounts numbers for these two IRAs were 183291214 and 179257240. I have reviewed the two IRA distribution receipts pertaining to these accounts, interviewed the victim customer and determined $24,561.70 and $12,868.20 were withdrawn from the accounts, respectively, on 6/30/2014 without B.E.B.'s authorization or knowledge. My investigation further revealed Miller used the combined amount to purchase a cashier's check (number

7

593102381) for $37,429.90 and deposited it into captioned account *0286. I have reviewed the 7/21/2014 monthly statement for captioned account *0286 and determined $37,429.90 was deposited into the account on 6/30/2014.

(18)     On 9/8/2015, Miller stole $25,000 from a savings account belonging to A.B.B. The account number for A.B.B.'s savings account was 101689124. I have reviewed the 9/30/2015 account statement pertaining to this savings account, interviewed the victim customer and determined the $25,000 was withdrawn on 9/8/2015 without A.B.B.'s authorization or knowledge. My investigation further revealed Miller transferred the $25,000 into captioned account *0286. I have reviewed the 9/21/2015 monthly statement for captioned account *0286 and determined the $25,000 was deposited into the account on 9/8/2015.

(19)     On 11/10/2015, Miller stole $10,000 from a savings account belonging to A.B.B. The account number for A.B.B.'s savings account was 101689124. I have reviewed the 11/30/2015 account statement pertaining to this savings account, interviewed the victim customer and determined the $10,000 was withdrawn on 11/10/2015 without A.B.B.'s authorization or knowledge. My investigation further revealed Miller transferred the $10,000 into captioned account *0286. I have reviewed the 11/23/2015 monthly statement for captioned account *0286 and determined the $10,000 was deposited into the account on 11/10/2015.

(20)     On 11/19/2015, Miller stole $11,000 from a savings account belonging to A.B.B. The account number for A.B.B.'s savings account was 101689124. I have reviewed the 11/30/2015 account statement pertaining to this savings account, interviewed the victim customer, and determined the $11,000 was withdrawn on 11/19/2015 without A.B.B.'s authorization or knowledge. My investigation further revealed Miller transferred the $11,000

into captioned account *0286. I have reviewed the 11/23/2015 monthly statement for captioned account *0286 and determined the $11,000 was deposited into the account on 11/19/2015.

(21) On 1/11/2016, Miller stole $60,042.64 from a CD belonging to M.H. and K.H. The account number for M.H.'s and K.H.'s CD was 189273141. I have reviewed the debit slip pertaining to the CD, interviewed one of the victim customers and determined the $60,042.64 was withdrawn on 1/11/2016 without M.H.'s or K.H.'s authorization. My investigation further revealed Miller used these stolen funds to purchase a cashier's check (number 593103822) for the same amount, and deposited the cashier's check into captioned account *0286. I have reviewed the 1/22/2016 monthly statement for captioned account *0286 and determined the $60,042.64 was deposited into the account on 1/11/2016.

*Captioned Account *9271*

(22) As explained above in paragraph 14, on 1/28/2016, Miller stole $84,529.69 and $70,334.24 (for a total of $154,863.93) from two CDs belonging to A.K.L. My investigation revealed $55,000 of the stolen amount was deposited into captioned account *9271 on 1/29/2016. I have reviewed the 2/5/2016 monthly statement for captioned account *9271 and determined the $55,000 was deposited into the account on 1/29/2016.

USE OF CAPTIONED ACCOUNTS FOR MONEY LAUNDERING PURPOSES

(23) The investigation further revealed Miller engaged in financial transactions, including electronic funds transfers, between the captioned accounts demonstrating Miller attempted to disguise the true nature, ownership, source, control, and location of the stolen funds, or proceeds of a specified unlawful activity. Many of these numerous inter-captioned account transfers are detailed below, and demonstrate Miller moved stolen funds between the captioned accounts, moved stolen funds back and forth between the same captioned accounts on

9

the same day or within a short period of time, and otherwise engaged in frequent transactions that do not appear to have any legitimate purpose.

<u>6/30/2014 theft: $37,429.90 stolen and deposited into captioned account *0286</u>

- (a) 8/31/2015: $1,530.60 from captioned account *0286 into *1272.
- (b) 8/31/2015: $1,500 from captioned account *1272 into *0286.
- (c) 9/2/2015: $1,000 from captioned account *1272 into *0286.
- (d) 9/8/2015: $2,000 from captioned account *1272 into *0286.

<u>9/8/2015 theft: $25,000 stolen and deposited into captioned account *0286</u>

- (e) 9/8/2015: $5,000 from captioned account *0286 into *1272.
- (f) 9/15/2015: $3,500 from captioned account *1272 into *0286.
- (g) 9/28/2015: $650 from captioned account *0286 into *1272.
- (h) 9/29/2015: $80 from captioned account *0286 into *1272.
- (i) 10/1/2015: $787.24 from captioned account *0286 into *1272.
- (j) 10/2/2015: $521.29 from captioned account *0286 into *1272.
- (k) 10/5/2015: $62 from captioned account *0286 into *1272.
- (l) 10/6/2015: $783.12 from captioned account *0286 into *1272.
- (m) 10/8/2015: $953.58 from captioned account *0286 into *1272.
- (n) 10/9/2015: $740.48 from captioned account *0286 into *1272.
- (o) 10/15/2015: $1,000 from captioned account *0286 into *1272.
- (p) 10/19/2015: $200 from captioned account *1272 into *0286.
- (q) 10/19/2015: $750 from captioned account *1272 into *0286.
- (r) 10/20/2015: $86.50 from captioned account *1272 into *9271.
- (s) 10/22/2015: $1,500 from captioned account *0286 into *1272.

(t)    11/2/2015: $1,500 from captioned account *1272 into *0286.

(u)    11/5/2015: $1,500 from captioned account *0286 into *1272.

(v)    11/6/2015: $1,000 from captioned account *1272 into *0286.

(w)    11/6/2015: $155.45 from captioned account *1272 into *0286.

11/10/2015 theft: $10,000 stolen and deposited into captioned account *0286

(x)    11/16/2015: $2,000 from captioned account *0286 into *1272.

(y)    11/17/2015: $2,500 from captioned account *0286 into *1272.

(z)    11/19/2015: $3,000 from captioned account *1272 into *0286.

11/19/2015 theft: $11,000 stolen and deposited into captioned account *0286

(aa)   11/20/2015: $750 from captioned account *0286 into *1272.

11/23/2015 theft: $16,991.35 stolen and deposited into captioned account *1272.

(bb)   11/23/2015: $10,000 from captioned account *1272 into *0286.

(cc)   11/24/2015: $1,000 from captioned account *1272 into *5481.

(dd)   11/25/2015: $1,400 from captioned account *5481 into *0286.

(ee)   12/23/2015: $32,000 from captioned account *1272 into *0286.

(ff)   12/28/2015: $5,000 from captioned account *1272 into *0286.

(gg)   12/30/2015: $1,000 from captioned account *0286 into *1272.

1/11/2016 theft: $80,056.86 stolen and deposited into captioned account *5481

(hh)   1/11/2016: $15,000 from captioned account *5481 into *0286.

(ii)   1/11/2016: $1,400 from captioned account *5481 into *1272

(jj)   1/11/2016: $15,500 from captioned account *5481 into *1272.

1/11/2016 theft: $60,042.64 stolen and deposited into captioned account *0286

(kk)   1/11/2016: $2,000 from captioned account *1272 into *0286.

11

(ll)   1/11/2016: $4,000 from captioned account *1272 into *0286.

(mm)  1/11/2016: $1,000 from captioned account *1272 into *0286.

(nn)   1/11/2016: $9,500 from captioned account *0286 into *1272.

(oo)   1/19/2016: $6,000 from captioned account *1272 into *0286.

1/29/2016 theft: $45,834.34 stolen and deposited into captioned account *1272

(pp)   1/29/2016: $1,000 from captioned account *1272 into *0286.

(qq)   1/29/2016: $1,600 from captioned account *5481 into *0286.

1/29/2016 theft: $55,000 stolen and deposited into captioned account *9271

(rr)   1/29/2016: $800 from captioned account *9271 into *0286.

(ss)   2/1/2016: $24,200 from captioned account *9271 into *0286.

(tt)   2/1/2016: $10,000 from captioned account *9271 into *1272.

(uu)   2/1/2016: $20,000 from captioned account *9271 into *7654.

(vv)   2/1/2016: $8,000 from captioned account *1272 into *0286.

(ww)  2/2/2016: $1,000 from captioned account *1272 into *7654.

(xx)   2/4/2016: $3,000 from captioned account *1272 into *7654.

(yy)   2/8/2016: $10,000 from captioned account *7654 into *1272.

(zz)   2/8/2016: $10,000 from captioned account *7654 into *0286.

2/9/2016 theft: $35,297.90 stolen and deposited into captioned account *1272

2/9/2016 theft: $52,000 stolen and deposited into captioned account *5481

(aaa)  2/10/2016: $15,000 from captioned account *5481 into *1272.

(bbb)  2/10/2016: $5,000 from captioned account *5481 into *0286.

(ccc)  2/10/2016: $33,000 from captioned account *5481 into *7654.

(ddd)  2/11/2016: $4,000 from captioned account *1272 into *0286.

(eee) 2/11/2016: $1,900 from captioned account *1272 into *7654.

(fff) 2/17/2016: $5,000 from captioned account *0286 into *1272.

(ggg) 2/22/2016: $20,000 from captioned account *7654 into *1272.

(hhh) 2/22/2016: $20,000 from captioned account *7654 into *0286.

(iii) 2/25/2016: $1,400 from captioned account *5481 into *0286.

(24) On or about 8/5/2016, an FTB representative told me that as of that date captioned account *5481 had a balance of $702.10, captioned account *7654 had a balance of $2,055.42, captioned account *1272 had a balance of $126,536.50, captioned account *0286 had a balance of $77,483.69, and captioned account *9271 had a balance of $739.28. The FTB representative also explained FTB had frozen the accounts, thereby preventing further deposits or withdrawals.

### SUMMARY OF STOLEN PROCEEDS DEPOSITED INTO AND LAUNDERED BETWEEN CAPTIONED ACCOUNTS

(25) 18 U.S.C. § 656 criminalizes the embezzlement or misapplication of money belonging to, or entrusted to the custody or care of, a bank insured by the Federal Deposit Insurance Corporation. In embezzling the money entrusted to First Tennessee Bank and moving it to his personal accounts (the five captioned accounts described herein), Miller violated 18 U.S.C. § 656, 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1956, and 18 U.S.C. § 1957, and any property, real or personal, which represents or is traceable to the gross receipts of this offense, is subject to forfeiture. Such property includes, without limitation, the following:

(a) $702.10 in United States Currency in captioned account *5481: Per the detailed list of transactions in paragraph 23, between approximately 1/11/2016 and 2/9/2016, Miller deposited a total of approximately $132,507 in embezzled funds *directly*

13

into captioned account *5481. Then, beginning on 1/11/2016 and continuing through 2/25/2016, Miller initiated transfers from captioned account *5481 into captioned accounts *0286, *1272, and *7654, *after* he deposited embezzled funds directly into captioned account *5481.

(b) $2,055.42 in United States Currency in captioned account *7654: Miller did not deposit any embezzled funds *directly* into captioned account *7654. However, between 2/1/2016 and 2/11/2016, per the detailed list of transactions in paragraph 23, Miller initiated transfers for approximately $58,900 into captioned account *7654 from captioned accounts *9271, *1272, and *5481. In addition, during the same time period Miller initiated transfers for approximately $53,000 from captioned account *5481 into captioned accounts *1272 *0286 and *7654. Some transactions moved embezzled funds through multiple captioned accounts, demonstrating captioned account *7654 was used as an intermediary account to facilitate the laundering *of* money. For example, on 2/1/2016, Miller transferred $20,000 in embezzled funds from captioned account *9271 into captioned account *7654. Only one week later, on 2/8/2016, Miller initiated *two* $10,000 transfers from captioned account *7654 into captioned accounts *1272 and *0286. As another example, on 2/10/2016, Miller transferred $33,000 in embezzled funds from captioned account *5481 into captioned account *7654. Then on 2/22/2016, Miller initiated *two* $20,000 transfers from captioned account *7654 into captioned accounts *1272 and *0286.

(c) $126,536.50 in United States Currency in captioned account *1272: Per the detailed list of transactions in paragraph 23, between 11/23/2015 and 2/9/2016, Miller deposited a total of approximately $98,123.59 in embezzled funds *directly* into captioned account *1272. Also, beginning on 8/31/2015 and continuing through 2/25/2016 Miller

14

initiated transfers into captioned account *1272 from captioned accounts *0286, *5481, *9271, and *7654, *after* he deposited embezzled funds into those captioned accounts. Conversely, during the same time period, Miller initiated transfers from captioned account *1272 into captioned accounts *0286, *9271, *5481, and *7654 demonstrating Miller used this captioned account for purposes of disguising the true nature, ownership, source and location of the embezzled funds.

(d) $77,483.69 in United States Currency in captioned account *0286: As identified in paragraph 16, the $27,249.07 of the stolen CD proceeds plus the transactions detailed in paragraph 23, between 4/6/2012 and 1/11/2016, Miller deposited a total of $170,721.61 in embezzled funds *directly* into captioned account *0286. Also detailed in paragraph 23, beginning on 8/31/2015 and continuing through 2/25/2016, Miller initiated transfers into captioned account *0286 from captioned accounts *1272, *5481, *9271, and *7654, *after* he deposited embezzled proceeds directly into those captioned accounts. Conversely, during the same time period, Miller initiated transfers from captioned account *0286 into captioned account *1272, again demonstrating that Miller used this captioned account for purposes of disguising the true nature, ownership, source and location of the embezzled funds.

(e) $739.28 in United States Currency in captioned account *9271: Per the detailed list of transactions in paragraph 23, on 1/29/2016, Miller deposited a total of $55,000 in embezzled funds *directly* into captioned account *9271. From 1/29/2016 through 2/1/2016, Miller initiated transfers for $55,000 from captioned account *9271 into captioned accounts *0286, *1272, and *7654, demonstrating that Miller used this captioned account to facilitate the transfer of *embezz*led funds.

15

(f)     Based upon the foregoing analysis, there is probable cause to believe, and I do believe, Miller deposited stolen funds into, and transferred stolen funds between, captioned accounts *5481, *7654, *1272, *0286, and *9271, in violation of 18 U.S.C. § 656 (theft by bank officer or employee), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and also used those captioned accounts to engage in financial transactions designed to conceal and disguise the true nature, ownership, source, and location of the stolen funds, which are proceeds of a specified unlawful activity, in violation of the money laundering provisions of 18 U.SC. § § 1956 and 1957.

## CONCLUSION

(26)    Based on the foregoing, I have probable cause to believe the assets identified above for seizure and forfeiture are property, or are property traceable to property that was involved in financial transactions designed to conceal and disguise the true nature, ownership, source, and location of the funds in violation of the money laundering provisions of 18 U.SC. § 1956 and § 1957 and are subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(e), (f) by 18 U.S.C. § 982(b)(1). The assets are therefore subject to civil and criminal forfeiture pursuant to 18 U.S.C. § § 981(a), 982, and 984. In addition, I have probable cause to believe that the property listed above constitutes proceeds resulting from theft by a bank officer or employee, in violation of 18 U.S.C. § 656 and are subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.SC. § 853(e) and (f) by 18 U.S.C. § 982(b)(1). The items are therefore subject to civil and criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. 982(a)(2)

(27)    Insofar as criminal forfeiture is concerned, I know a protective order would be inadequate to ensure the preservation of the funds in the captioned accounts, because funds stored electronically in bank accounts can be easily and almost instantaneously transferred from

remote locations, and that financial institutions do not always act promptly to make all of their employees aware of restraints which are placed on such funds, nor are banks mandated to hold or freeze said accounts.

(28) Finally, it is respectfully requested the Court issue an order maintaining this affidavit and any attachments thereto sealed, until such time as the United States requests they be unsealed. The premature release of the facts contained in this affidavit could be detrimental to our ongoing investigation.

FURTHER THIS AFFIANT SAYETH NOT

_____
Michele Yaroma
Special Agent, Federal Bureau of Investigation


Sworn to before me this 16th day of September, 2016.

_____
Clifton L. Corker
United States Magistrate Judge
Eastern District of Tennessee

17